JUDGE BUCHWALD

15 CV 02990

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

JASMIN MIRANDA,

Plaintiff,

- against -

PEI COBB FREED & PARTNERS ARCHITECTS LLP,
LUCRECIA BEZA, *Individually*, and
VINCENT J. LONGO, *Individually*,

Defendants.

---------------------------------------------------------------------X

**Case No.**

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

RECEIVED
APR 17 2015
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, JASMIN MIRANDA, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq*. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated against** and **Terminated** by her employer solely due to her **Disability/Perceived Disability (Stroke/Left Hemiparesis)**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq*., and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Southern District of New York, and the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated April 3, 2015, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff JASMIN MIRANDA ("MIRANDA") is a resident of the State of New York and County of Kings.

9. That at all times relevant hereto, Defendant PEI COBB FREED & PARTNERS ARCHITECTS LLP ("PEI COBB") is a domestic registered limited liability partnership, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principle place of business located at 88 Pine Street, New York, New York 10005.

10. That at all times relevant hereto, Plaintiff MIRANDA was an employee of Defendant PEI COBB.

11. That at all times relevant hereto, Defendant LUCRECIA BEZA ("BEZA") was an employee of Defendant PEI COBB, holding the position of "Human Resources Manager."

12. That at all times relevant hereto, Defendant BEZA was Plaintiff MIRANDA's supervisor and/or had supervisory authority over Plaintiff MIRANDA.

13. That at all times relevant hereto, Defendant VINCENT J. LONGO ("LONGO") was an employee of Defendant PEI COBB, holding the position of "Director."

14. That at all times relevant hereto, Defendant LONGO was Plaintiff MIRANDA's supervisor and/or had supervisory authority over Plaintiff MIRANDA.

15. That at all times relevant hereto, Defendant PEI COBB, Defendant BEZA, and Defendant LONGO are collectively referred to herein as "Defendants."

## MATERIAL FACTS

16. In or about April 2007, Plaintiff MIRANDA began working for Defendants as an "Accounts Receivable Specialist," earning approximately $57,300 per year.

17. From the day Plaintiff MIRANDA began her employment with Defendants, Plaintiff MIRANDA was an exemplary employee, was never disciplined, and always received compliments for her work performance.

18. **However, everything changed when Plaintiff MIRANDA notified Defendants of her disability (Stroke/Left Hemiparesis) and requested a reasonable accommodation for this disability.**

19. While Defendants were initially happy with Plaintiff MIRANDA's excellent work product and diligent work ethic, upon learning that Plaintiff MIRANDA suffered from a disability, **Defendants immediately began to discriminate against her, ultimately resulting in the unlawful termination of her employment.**

20. On or about Saturday, November 16, 2013, while at home, Plaintiff MIRANDA suddenly found it difficult to find the words she wanted to use, had slurred speech, and was losing feeling in her left arm and hand. As such, Plaintiff MIRANDA proceeded to immediately

visit the Wyckoff Hospital emergency room.

21. At the hospital, Plaintiff MIRANDA's doctors made a preliminary diagnosis of **Hemiparesis caused by a Stroke** but needed to conduct more testing to confirm the diagnosis. Hemiparesis is weakness on one side of the body, caused by a number of medical conditions, including a stroke.

22. As such, on or about Monday, November 18, 2013, Plaintiff MIRANDA's brother, Noel, called Defendants, informed them that Plaintiff MIRANDA was in the hospital with a possible stroke, and notified Defendants that pursuant to Plaintiff MIRANDA's doctor's instructions, she would need a short medical leave of absence as she undergoes further testing. Plaintiff MIRANDA's brother agreed to keep Defendants updated regarding Plaintiff MIRANDA's symptoms and ultimate diagnosis. Defendants agreed to accommodate Plaintiff MIRANDA's disability in the form of a short medical leave of absence.

23. On or about Thursday, November 21, 2013, Plaintiff MIRANDA was officially diagnosed with **Left Hemiparesis caused by a Stroke**.

24. As such, also on or about November 21, 2013, Plaintiff MIRANDA sent a text message to Defendant BEZA informing her of the diagnosis, and notifying Defendants that pursuant to her doctor's instructions, she would need a medical leave of absence pursuant to the Family and Medical Leave Act ("FMLA"). Defendants immediately granted this request, at which point Plaintiff MIRANDA began her FMLA medical leave of absence.

25. Beginning on or about November 21, 2013, Plaintiff MIRANDA provided Defendant BEZA with updated information on a weekly basis concerning the status of her disability and medical leave of absence.

26. On or about January 21, 2014, after being evaluated by her doctors, Plaintiff MIRANDA notified Defendant BEZA that, pursuant to her doctor's instructions, Plaintiff MIRANDA could not return to work until April 15, 2014. Plaintiff MIRANDA was thus requesting a continuation of her medical leave of absence as a reasonable accommodation for her disability, an accommodation that posed no undue burden to Defendants. Just like before, Defendant BEZA told Plaintiff MIRANDA that it wasn't a problem, that Defendants were holding her position open for her, and that she should just "concentrate on getting better."

27. On or about March 19, 2014, Plaintiff MIRANDA informed Defendant LONGO, via text message, that her doctor now believes Plaintiff MIRANDA will be able to return to work sooner than expected, to which Defendant LONGO responded, "with all this work backing up, this is definitely an option."

28. On or about April 1, 2014, Plaintiff MIRANDA sent an email to Defendant BEZA to which she attached a letter from her doctor, Dr. Ira G. Rashbaum, MD, stating, "After discussion with two members of her Rusk care team, it has been recommended that **Ms. Miranda could return to work as of April 1, 2014 on Tuesdays, Thursdays and Fridays** eight hours per day with frequent breaks and extended deadlines, **if possible**. If she does well during the first three weeks, her schedule can be reassessed as to a gradual return to full-time status as tolerated, and permitting her continued outpatient rehabilitation schedule." (emphasis added).

29. However, the following day, **on or about April 2, 2014**, Defendant BEZA and Defendant LONGO called Plaintiff MIRANDA and, without any warning, **suddenly terminated Plaintiff MIRANDA's employment**, simply telling her, "We received the notice but at

this time, we are going a different route and go with another person. We can't accommodate you because we need someone here full-time."

30. Plaintiff MIRANDA immediately responded that she might be able to work from home on Mondays and Wednesdays and that hopefully she would be able to return to full-duty in about three (3) weeks. Plaintiff MIRANDA also explained that if Defendants couldn't provide her with breaks and extended deadlines requested in the letter, she would work without these accommodations, as they were simply recommendations, not requirements.

31. Rather shockingly, Defendant LONGO proceeded to say, **"I just don't think this will work out. We will have to retrain you because I don't think that you are capable of doing your job. We will have to show you all the new passwords."**

32. Plaintiff MIRANDA was horrified to hear this, as it was clear to her that Defendants perceived Plaintiff MIRANDA to be extremely more disabled than she actually was. Plaintiff MIRANDA simply had some numbness on the left side of her body, causing some difficulty walking. **Plaintiff MIRANDA did not have any cognitive functioning deficiency as Defendants were clearly implying**.

33. Thus, on or about April 2, 2014, although Plaintiff MIRANDA was ready, willing, and able to work, without any warning, Defendants suddenly terminated her employment due to her disability and/or perceived disability.

34. Rather than continuing to accommodate Plaintiff MIRANDA's disability, Defendants figured it was easier to simply terminate Plaintiff MIRANDA's employment.

35. Furthermore, Defendants never even attempted to engage in any interactive process to try and figure out a way to accommodate Plaintiff MIRANDA's disability in a way that would enable her to continue her employment with Defendants.

36. It was clear that Defendants made the decision to terminate Plaintiff MIRANDA's employment upon learning that Plaintiff MIRANDA requested another reasonable accommodation for her disability, as Defendants obviously perceived Plaintiff MIRANDA to suffer from cognitive deficiencies from which she did not suffer.

37. Based upon the aforementioned suspicious actions, **it is clear that Defendants discriminated against, and terminated the employment of, Plaintiff MIRANDA solely due to her disability/perceived disability.**

38. Defendants obviously did not like the fact that Plaintiff MIRANDA was disabled and thus began a discriminatory campaign against her, all in an effort to set Plaintiff MIRANDA up for termination.

39. Defendants were also apparently apprehensive about keeping a disabled employee due to potential future doctors' appointments and future accommodations.

40. Defendants also clearly but falsely believed that Plaintiff MIRANDA's disability would interfere with her ability to perform her job duties in the future.

41. Plaintiff MIRANDA's condition is an impairment that substantially limits one or more of her major life activities within the meaning of §12102(1)(A) of the ADA.

42. Plaintiff MIRANDA is a qualified individual who can perform the essential functions of her employment with a reasonable accommodation as defined by §12111(8) of the ADA.

43. **But for the fact that Plaintiff MIRANDA was disabled and had requested a reasonable accommodation for her disability, Defendants would not have terminated her employment.**

44. Plaintiff MIRANDA felt offended, disturbed, and humiliated by the blatantly unlawful, discriminatory, and retaliatory termination.

45. Plaintiff MIRANDA's performance was, upon information and belief, above average during the course of her employment with Defendants.

46. Plaintiff MIRANDA has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

47. **Defendants' actions and conduct were intentional and intended to harm Plaintiff MIRANDA**.

48. As a result of Defendants' actions, Plaintiff MIRANDA feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

49. As a result of Defendants' discriminatory treatment of Plaintiff MIRANDA, she has suffered severe emotional distress and physical ailments.

50. As a result of the acts and conduct complained of herein, Plaintiff MIRANDA has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff MIRANDA has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff MIRANDA further experienced severe emotional and physical distress.

51. As a result of the above, Plaintiff MIRANDA has been damaged in an amount in excess of the jurisdiction of the Court.

52. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff MIRANDA demands Punitive Damages as against all Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)**

53. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

54. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

55. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

56. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability.

57. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)**

58. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

59. The ADA prohibits retaliation, interference, coercion, or intimidation.

60. 42 U.S.C. § 12203 provides:

a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or

        because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

61. Defendants violated this section as set forth herein.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

64. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by discriminating against Plaintiff and terminating her employment solely because of her disability.

**AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

67. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

1. the employee or agent exercised managerial or supervisory responsibility; or

2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to

have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

70. Defendants violated the section cited herein as set forth.

**JURY DEMAND**

71. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act and the New York City Administrative Code, §8-107 *et. seq.*, in that Defendants discriminated against Plaintiff on the basis of her disability and/or perceived disability;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
April 14, 2015

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: ______________________
Alex Umansky (AU7961)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431

EEOC Form 161-B (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Jasmine Miranda**
**433 Menaham Street**
**Apt. 2**
**Brooklyn, NY 11237**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2015-01468** | **John B. Douglass, Supervisory Investigator** | **(212) 336-3765** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost.** (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry, District Director

04/03/15 *(Date Mailed)*

Enclosures(s)

cc:

Attn
Director of Human Resources
PEI COBB FREED & PARTNERS ARCHITECTS, LLP
88 Pine Street
New York, NY 10005

Alex Umansky
PHILLIPS & ASSOCIATES, PLLC
45 Broadway
Suite 620
New York, NY 10006